McCONNELL v. KITCHENS.

1.  Where a defendant in his answer asserts that there are stipulations in the contract other than those stated in the complaint, he does not admit the plaintiff's cause of action as stated in the complaint, and, therefore, is not entitled to open and reply.

2.  Under the acts of 1872 (15 *Stat.* 33) and 1879 (17 *Stat.* 72), the sale of commercial fertilizers is forbidden unless the regulations prescribed by those acts were complied with—those requirements not being solely for revenue, but to protect the public from imposition and fraud, and their violation being declared a misdemeanor and punishable by recurring penalties.

3.  The general rule is, that a contract to do an act which is prohibited by statute, or which is contrary to public policy, is void and cannot be enforced in a court of justice, and such prohibition may be implied from the imposition of a penalty.

4.  Commercial fertilizers sold in this State must bear a tag stating the several particulars required by the statutes, one of the most important of which is "the constituent elements" of the fertilizer; and this is necessary whether the chemical ingredients specified in the statute are present or not; but if asserted to be present, then the percentage of such ingredients.

5.  Where a merchant sold prepared agricultural lime in this State without a tag stating the chemical composition of such fertilizer, and the date of analysis, and took a note for the purchase-money—*held*, in action on this note, that the action was forbidden by statute, illegal and void, and the complaint was dismissed.

Before Kershaw, J., Chester, March, 1883.

Action by W. H. McConnell against Addison F. Kitchens. The opinion fully states the case.

*Messrs. Jno. M. McNeel* and *G. G. Dent*, for appellant.

*Messrs. J. & J. Hemphill*, contra.

The contract was not illegal and void. 17 *Stat.* 75. The chemical composition is not to be stated unless certain specified ingredients are asserted to be present. The tax was for purposes of revenue, and, therefore, its non-payment would not vitiate the contract. 14 *Mees. & W.* 452, 463 ; 11 *East* 180. As matter of fact it was paid, and receipt was exhibited at the trial. A sale without compliance with the requirements, is nowhere prohibited in the statute, and, therefore, the contract was not void. 26 *Am. Rep.* 149 ; 25 *Id.* 677. There are varying degrees of penalties for the several omissions ; if the contract is void, there would be same for all. Absence of a tag would be as severely punished as a false analysis. The act of 1880 (17 *Stat.* 414), passed after these sales, provides for a forfeiture, thus showing that none previously existed. See 12 *How.* 85 ; 75 *Va.* 239 (40 *Am. Rep.* 720) ; 106 *Mass.* 435 (8 *Am. Rep.* 346).

March 1st, 1884. The opinion of the court was delivered by

Mr. Justice McIver. This was an action on a contract in writing, under seal, dated March 4th, 1880, by which the defendant promised to pay the plaintiff $310.50 on or before November 1st, 1880. The consideration expressed in the writing was eleven and a half tons of Lee's P. A. lime (meaning Lee's prepared agricultural lime). The defendant, in his answer, alleged that the contract upon which the action was founded was different in form, and contained other material stipulations from that described in the complaint, and set up two distinct affirmative defenses—one of failure of consideration, and the other that the contract was illegal, being made in violation of certain statutes hereinafter quoted.

The defendant claimed the right to open and reply, both in evidence and argument, which was refused and exception duly taken. Testimony was offered to sustain both of the defenses set up in the answer. To so much of the charge as relates to the defense of failure of consideration, no exception was taken. "On the second point made by the defendant, viz., the plea of illegality of the consideration and of the contract, the following facts were proven: First. That the plaintiff sold to the defendant a commercial fertilizer, known as Lee's prepared agricultural lime, on March 4th, A. D. 1880; that the amount sold and delivered to the defendant was eleven and one-half tons, put up in bags, each one of which weighed one hundred and twenty-five pounds; that the bags had on them the name, location and trade-mark of the manufacurer, but did not have the chemical composition of the contents of the bags, or the date of its analysis, or that the privilege tax had been paid, or any tags at all. The plaintiff admitted the fertilizer was sold and delivered to the defendant in this condition, but proved that he had never asserted or claimed that this lime had any of the chemical ingredients named and specified in section 18 of the act of assembly creating the department of agriculture, approved December 23d, 1879, and was ready and offered to prove a receipt showing that the privilege tax had been paid to the department of agriculture, which was ruled out by the judge, said receipt being without date, and did not show when the privilege tax was paid. The further fact was shown that the note sued on for $310.50 was given by the defendant to the plaintiff on March 4th, A. D. 1880, for the fertilizer sold and delivered as described aforesaid."

The Circuit judge held that the contract was not illegal and could be enforced, to which exception was duly taken. The jury rendered a verdict for the plaintiff for the sum of $250, and judgment being entered thereon, the defendant appeals upon two grounds, substantially as follows: 1. That the Circuit judge erred in holding that the plaintiff was entitled to open and reply. 2. Because the Circuit judge erred in holding that the contract sued upon was not illegal, and could be enforced by an action at law.

The question as to which party is entitled to open and reply

depends upon an inspection of the pleadings only, and must be determined without any reference to the testimony which may be subsequently offered. The rule seems to be that when the defendant admits upon the record the plaintiff's cause of action, as stated in the complaint, and relies solely upon an affirmative defense based upon new matter stated in the answer, he is then entitled to open and reply, as the plaintiff in such a case would have nothing whatever to prove, and the defendant would assume the burden of proving his affirmative defense, and thus in reality become the actor. But unless this is done, the plaintiff is bound to establish his cause of action, and, therefore, entitled to open and reply. *Brown* v. *Kirkpatrick*, 5 *S. C.* 267; *Burckhalter* v. *Coward*, 16 *S. C.* 435; *Kennedy* v. *Moore*, 17 *S. C.* 464; *Boyce* v. *Lake*, 17 *Id.* 481. In this case the plaintiff, in his complaint, stated as his cause of action a certain contract in writing containing certain terms and stipulations, while the defendant, in his answer, in effect denied that the contract was properly described in the complaint, and, on the contrary, alleged that the contract really contained other terms and stipulations, as appeared by a copy thereof set out in the answer. It cannot, therefore, be said that the defendant admitted the plaintiff's cause of action, as stated in the complaint, and hence, under the rule above stated, he was not entitled to open and reply.

For a proper understanding of the question raised by the second ground of appeal, it will be necessary to consider the terms of the statutes which it is alleged were violated in the contract sued upon. The first statute upon the subject is the act of February 2d, 1872, (15 *Stat.* 33,) the language of which is as follows: "All commercial fertilizers manufactured, sold or kept for sale in the State of South Carolina, shall have affixed to every bag, barrel or parcel thereof a written or printed label, which shall specify the names of the manufacturer and seller, their respective places of business, and the constituent parts thereof. Section 2. Whoever manufactures, sells or keeps for sale any commercial fertilizer or fertilizers, not labeled in accordance with the provisions of the preceding section, * * * shall be punished by a fine of twenty dollars for the first offense, and

2c

a fine of forty dollars for the second and every subsequent offense," &c.

The next legislation upon the subject will be found in sections 18 and 19 of "An act to create a department of agriculture, defining its purposes and duties, and charging it with inspection of phosphates and regulation of sales of commercial fertilizers," approved December 23d, 1879, (17 *Stat.* 72.) The language used in those sections is as follows: " Section 18. That all persons or companies engaged in the manufacture or sale of fertilizers or commercial manures shall pay to the commissioner of agriculture twenty-five cents per ton for every ton of such fertilizer or commercial manure sold or offered for sale in this State, the said amount to be paid into the State treasury for the exclusive use and benefit of the department of agriculture. Any person, or officer or agent of any corporation, neglecting to pay the sum provided in this section shall be deemed guilty of a misdemeanor, and, upon conviction, shall be fined in the discretion of the court, which fine shall be paid into the State treasury for the exclusive use and benefit of the department of agriculture. Section 19. That every bag, barrel or other package of such fertilizers or commercial manure, as above designated, offered for sale, or delivered after sale in this State, shall have thereon a plainly printed label or stamp which shall truly set forth the name, location and trade-mark of the manufacturer, also the chemical composition of the contents of such package and the real percentage of any of the following ingredients, asserted to be present, to wit : soluble and precipitated phosphoric acid, soluble potassa, ammonia or its equivalent in nitrogen, together with the date of its analysis, and that the privilege tax, provided for in section 18, has been paid ; and any such fertilizer as shall be ascertained by analysis not to contain the ingredients and percentage set forth, as above provided, shall be liable to seizure and condemnation, and when condemned shall be sold by the board of agriculture for the exclusive use and benefit of the department of agriculture. Any merchant, trader, manufacturer, agent or person who shall sell or offer for sale, or deliver after sale, or receive any commercial fertilizer without having such labels and stamps, as hereinbefore provided, attached

thereto, shall be liable to a fine of ten dollars for each separate bag, or barrel, or package sold or offered for sale, to be sued for before any trial justice, and to be collected by due process of law. The amount so recovered, after paying costs, shall be equally divided between the party or parties suing and the department."

It will thus be seen that by the act of 1872, which had not been repealed at the time the cause of action in this case arose, except in so far as any of its provisions conflicted with the subsequent act of 1879 (and the only conflict was as to the amount of the penalty and the mode of its enforcement), it was made a misdemeanor, punishable by fine, for any person to sell or keep for sale any commercial fertilizer which did not have a label affixed to each bag or other package, specifying three things: (1) The names of the manufacturer and seller; (2) their respective places of business; (3) the constituent elements of such fertilizer. By the subsequent act of 1879, every person engaged in the manufacture or sale of commercial fertilizers was required: First. To pay to the commissioner of agriculture twenty-five cents per ton for every ton sold or offered for sale in this State, under a penalty of being deemed guilty of a misdemeanor and subjected to a fine at the discretion of the court. Second. That every bag or other package of such fertilizer offered for sale or delivered after sale in this State, should have attached thereto a label setting forth five things: (1) The name, location and trademark of the manufacturer; (2) the chemical composition of the contents of such package; (3) the real percentage of certain specified ingredients, if such ingredients are asserted to be present as part of the chemical contents of such package; (4) the date of the analysis; (5) that the privilege tax of twenty-five cents per ton, above provided for, has been paid. Third. That any person who shall sell or offer for sale, or deliver after sale or receive any commercial fertilizer without having such a label attached thereto, shall be liable to a fine of ten dollars for each separate bag or other package sold or offered for sale, to be sued for and recovered before any trial justice.

Now, while it is true that the legislature has not, in so many words, declared that it shall not be lawful to sell any commercial

fertilizer in this State, unless the regulations above prescribed have been complied with, or that a contract for the sale of such fertilizer, without complying with such regulations, shall be illegal and void, yet it seems to us manifest that the real object of the legislation set out above was to prohibit the sale of commercial fertilizers unless the prescribed regulations are complied with, in order to protect the farming interest from deceit or imposition in the sale of an article which has come to be so extensively, if not universally, used by the farmers of the country, as commercial fertilizers.

In 2 *Benj. Sales,* § 825, the writer, after commenting at length upon the cases, deduces the following rules therefrom : " First. That where a contract is prohibited by statute it is immaterial to inquire whether the statute was passed for revenue purposes only or for any other object. It is enough that parliament has prohibited it, and it is therefore void. Secondly. That where the question is whether a contract has been prohibited by statute, it is material in construing the statute to ascertain whether the legislature had in view solely the security and collection of the revenue, or had in view, in whole or in part, the protection of the public from fraud in contracts or the promotion of some object of public policy. In the former case the inference is that the statute was not intended to prohibit contracts; in the latter that it was. Thirdly. That in seeking for the meaning of the lawgiver, it is material also to inquire whether the penalty is imposed once for all on the offense of failing to comply with the requirements of the statute, or whether it is a recurring penalty, repeated as often as the offending party may have dealing. In the latter case the statute is intended to prevent the dealing, to prohibit the contract, and the contract is therefore void ; but in the former case such is not the intention, and the contract will be enforced."

Testing the legislation in question by these rules, it is obvious that, though the sale of commercial fertilizers without a compliance with the prescribed regulations is not, in express terms, forbidden, the legislature did not have in view "solely the security and collection of the revenue," but, on the contrary, the purpose was to protect the public from fraud in such sales, and therefore

the inference is that the legislation was intended to prohibit sales of commercial fertilizers except where the prescribed regulations were complied with. It is quite clear that the act of 1872 contains nothing whatever to indicate a purpose to secure the collection of revenue, as there is not a word in it which looks to the imposition or collection of any tax whatever.

It is equally clear to our minds that the subsequent act of 1879 discloses no such purpose. So far from there being anything in this act which indicates that the sole purpose of the legislature was to secure the collection of revenue, the only thing which even looks that way is the provision in section 18, requiring the payment of twenty-five cents per ton for every ton of commercial fertilizers sold or offered for sale in this State, which, in section 19, is denominated a "privilege tax." But this was manifestly designed, not as a source of revenue to the State, but simply as a fund to meet the expenses incurred in enforcing the other regulations of the act, for though this tax, if it may be so called, was required to be paid into the State treasury, it was not put there like the other taxes of the State, but was placed there expressly " for the exclusive use and benefit of the department of agriculture," which by this act was specially charged with the enforcement of the regulations for the sale of commercial fertilizers.

Again, it will be seen that by the terms of both these acts, the penalty for failing to comply with the requirements of these acts is not imposed once for all, but is a recurring penalty, repeated as often as the offending party may have dealings. In the act of 1872 the penalty is "a fine of twenty dollars for the first offense, and a fine of forty dollars for the second and every subsequent offense;" and in the act of 1879 the penalty is "a fine of ten dollars for each separate bag, or barrel, or package sold or offered for sale." So, that, testing the legislation of this State upon the subject by the rules laid down by that eminent jurist, Mr. Benjamin, the conclusion is unavoidable that the object of the legislature was to prohibit the sale of commercial fertilizers in this State unless the requirements of the statutes are complied with.

The general rule, undoubtedly, is, that a contract to do an act

which is prohibited by statute, or which is contrary to public policy, is void, and cannot be enforced in a court of justice. It seems, too, to be equally well established that it is not necessary that the act should be prohibited in express terms, but that a prohibition may be implied from the imposition of a penalty, because, as Lord Holt says: "A penalty implies a prohibition, though there are no prohibitory words in the statute." *Miller* v. *Post*, 1 *Allen* 434; *Pray* v. *Burbank*, 10 *N. H.* 377; *Law* v. *Hodson*, 11 *East* 300; *Kleckley* v. *Leyden*, 63 *Ga.* 216; *Johnston* v. *McConnell*, 65 *Ga.* 129; *Dillon* v. *Allen*, 26 *Am. Rep.* 145, (46 *Iowa* 299); *Woods* v. *Armstrong*, 25 *Am. Rep.* 671, (54 *Ala.* 150). The cases above cited from Alabama and Georgia arose upon statutes regulating the sales of commercial fertilizers, and the contracts were held void for non-compliance with the prescribed regulations. Especial attention is invited to the notes appended to the case of *Woods* v. *Armstrong*, by the editor of the American Reports, as containing a full collection of the authorities.

The cases of *Harris* v. *Runnels*, 12 *How.* 79, and *Niemeyer* v. *Wright*, 40 *Am. Rep.* 720 (75 *Va.* 239), mainly relied upon by respondent's counsel, do not, in our judgment, sustain his position. Both those cases recognize the doctrine that a contract founded on an act prohibited by statute is void, and that it makes no difference whether the prohibition is expressed or is to be implied from the imposition of a penalty. They, however, maintain the doctrine that whether a prohibition is to be implied from the imposition of a penalty is a question of legislative intent, to be ascertained by an examination of the various provisions of the statute in question, and where there are any terms in the statute which indicate that the legislature did not intend to avoid a contract made in contravention of it, such a contract may be enforced. But, to use the language of ·Mr. Justice Wayne, in *Harris* v. *Runnels*, which seems to have been the authority upon which the case of *Niemeyer* v. *Wright* was mainly based, "When the statute is silent, and contains nothing from which the contrary can be properly inferred, a contract in contravention of it is void."

In both of the cases the court went on to show that there were

other provisions in the statutes there brought under review, which, to their minds, indicated a purpose on the part of the legislature not to declare contracts made in contravention of the terms of such statutes void, but simply to impose a penalty for a failure to comply with the statutory regulations. So that, even if we should adopt the views announced in these cases, the conclusion which we have reached would not be affected, for in the statutes which we are called upon to construe, there is not only no provision which would indicate that the legislature did not intend to declare a contract for the sale of commercial fertilizers void, unless the regulations prescribed by statute were complied with, but on the contrary we are satisfied that the main object of this legislation was to protect the farmers from fraud and imposition in the sale of commercial fertilizers, and absolutely to prohibit such sales unless the regulations prescribed are complied with.

Indeed, aside from any authority, it would seem to us altogether anomalous, not to use any harsher term, to hold that a court of justice should enforce a contract founded upon an act which is absolutely forbidden by the law-making department of the government. As was well said in *Bank* v. *Owens*, 2 *Pet.* 539, " No court of justice can, in its nature, be made the handmaid of iniquity. Courts are instituted to carry into effect the laws of a country ; how can they, then, become auxiliary to the consummation of violations of law ? * * * There can be no civil right where there can be no legal remedy, and there can be no legal remedy for that which is itself illegal." Or, as is said in *O'Donnell* v. *Sweeney*, 5 *Ala.* 468, " It would indeed be a strange anomaly if a contract, made in violation of a statute, and prohibited by a penalty, could be enforced in the courts of the same country whose laws are thus trampled on and set at defiance."

The only remaining inquiry is, whether the sale, upon which the contract sued upon in this case was based, was made in violation of the law regulating the sale of commercial fertilizers. The undisputed facts set out in the " Case," show beyond all question that it was. It is conceded that the bags in which the fertilizer was put up, "had on them the name, location and trade-

mark of the manufacturer, but did not have the chemical com-
position of the contents of the bags, or the date of its analysis,
or that the privilege tax had been paid." They, therefore,
lacked at least one thing, and, perhaps, the most important, re-
quired by the act of 1872—the constituent elements of such
fertilizer ; and at least three things required by the act of 1879,
to wit: (1) The chemical composition of the contents of the
package ; (2) The date of the analysis ; (3) That the privilege
tax had been paid.

It is true that the counsel for respondent has contended that
the act of 1879 does not require the chemical composition of the
contents of the package to be stated, except where certain ingre-
dients specified in the statute are asserted to be present, and that
in this case no such ingredients were asserted to be present, but
we do not so understand the terms of the act. On the contrary,
we think the true reading of the act is, that in all cases the label
or stamp shall set forth the chemical composition of the contents
of the package, and if any of the particular ingredients men-
tioned in the statute are set forth as part of the chemical com-
position of the contents of a package of fertilizers, then the real
percentage of such ingredients, as set forth or asserted to be
present, must likewise be stated.

It seems to us that the chemical composition of a fertilizer is
the important matter to be known, and to read the statute as if
it dispensed with this important requirement, except where cer-
tain specified ingredients were asserted to be present, would not
only emasculate the statute, but would pervert its language from
its plain meaning. So, that, even if we should hold, as con-
tended for by respondent, that the mere absence of a label show-
ing that the privilege tax had been paid, would not invalidate
the sale, (about which, however, we are not now called upon to
express any opinion,) we would still be compelled to hold that
the sale was illegal, as there was a failure to comply with other
fundamental requirements of the law.

Inasmuch as we have seen that the object of the legislation
under review was not to secure the collection of revenue, we
have not deemed it necessary to consider the question, about
which there seems to be some conflict of authority, whether a

sale made in violation of statutory regulations designed to secure the collection of the revenue, would be illegal and void. See *Brown* v. *Duncan*, 10 *Barn. & C.* 93; *Johnson* v. *Hudson*, 11 *East* 180; *Cope* v. *Rowlands*, 2 *Mees. & W.* 157; *Griffith* v. *Wells*, 3 *Den.* 226; *Smith* v. *Mawhood*, 14 *Mees. & W.* 452; *Larned* v. *Andrews*, 8 *Am. Rep.* 346, (106 *Mass.* 435).

We are therefore of opinion that the contract sued upon in this case is illegal and void, and that the Circuit judge erred in instructing the jury otherwise.

The judgment of this court is that the judgment of the Circuit Court be reversed, and that the complaint be dismissed.