**UNITED STATES of America,**
**Plaintiff,**

v.

**BOCA RATON CAPITAL CORPORA-**
**TION, a Florida corporation,**
**Defendant.**

Civ. A. No. 68–52.

United States District Court
S. D. Florida,
Miami Division.

March 5, 1968.

Alfred E. Sapp, Asst. U. S. Atty., Miami, Fla., for plaintiff.

Kenneth Van Der Hulse, Palm Beach, Fla., for defendant.

John E. Hogan, Washington, D. C., and Arthur Miller, Miami, Fla., for the Small Business Administration.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

FULTON, Chief Judge.

This matter having come before the Court for hearing on the motion of the plaintiff, United States of America, for a temporary restraining order, preliminary injunction, and appointment of a temporary receiver, and the Court, on its own motion, with the concurrence of counsel for both parties, having heard the matter as a trial on the merits, and the Court having considered all of the testimony, pleadings, evidence, and arguments of counsel for each party, hereby makes the following Findings of Fact and Conclusions of Law:

### FINDINGS OF FACT

1. Defendant, Boca Raton Capital Corporation, has failed to maintain at all times an unimpaired capital as defined and required by the Small Business Administration (SBA) Regulations. Defendant's retained earnings deficit as of January 31, 1968, was $201,981.-63, as reflected in defendant's own records; and its capital is substantially impaired.

2. Defendant, judged by reasonably prudent business and lending practices, has failed to adequately establish reserves for losses and uncollectibles. If such reserves were established, it is possible that the defendant is, and has been, insolvent.

3. Defendant, Boca Raton Capital Corporation, has extended financing to Custom Engineering & Test Co. in the total amount of $238,430.50. Section 306 of the Small Business Investment Act, 15 U.S.C. § 686(a), and Section 107.708(a) of the SBA Regulations (Rev. 3), and as amended, Section 107.301(c) (3), of the SBA Regulations, 33 Fed.Reg. 329 (1968), prohibit a small business investment company from investing over 20% of its combined paid-in capital and paid-in surplus (including debentures purchased by SBA) in any single small business concern. Defendant's statutory and regulatory limitation of loans to, or investments in, Custom Engineering & Test Co. was $120,000. No prior written approval of SBA was obtained by defendant for the financing extended to Custom Engineering & Test Co. in excess of $120,000.

4. Defendant owns, and has owned for some time, 70,000 shares of the capital stock of Custom Engineering & Test Co. There is also common management and interlocking directorships of the two companies. Defendant has no plan in existence for the sale of the stock of Custom Engineering & Test Co. and no plan for the extinguishment of common management or interlocking directorship, nor has it advised SBA of its intention to adopt such plans.

5. Defendant also owns approximately 10% of the capital stock of Electro-Mechanical Systems, Inc., (E.M.S. Industries). Defendant has exercised an option to purchase an additional number of shares therein in excess of 90,000. Officers, directors and stockholders of defendant also own stock in Electro-Mechanical Systems, Inc., or its successor concern, in their individual names such that a majority of stock of the latter concern is owned by the defendant or those affiliated with the defendant as managers, directors and/or stockholders. There is also common management and interlocking directorships of defendant and Electro-Mechanical Systems, Inc.

Defendant has not advised SBA, nor is there evidence that defendant, its officers, directors, or stockholders plan or intend to sell their stock in Electro-Mechanical Systems, Inc., or to otherwise extinguish the common management and interlocking directorships of the two concerns.

6. Defendant's financing extended to Custom Engineering & Test Co., as noted hereinabove, whereby the defendant controls the operations of Custom Engineering & Test Co., is prejudicial to the Small Business Administration in that it is contrary to the policies of

SBA as expressed in the SBA Regulations. It was never intended that Federal funds supplied by SBA to the defendant were to be employed for, and diverted to, concerns affiliated with the defendant by common ownership or control similar to that of a holding company. Moreover, financing to concerns affiliated with the defendant by common control is prejudicial to small business concerns for whom those funds might otherwise have been made available.

In addition, the financing extended by the defendant to Custom Engineering & Test Co. constituted indirect financing to officers and directors of the defendant, as well as indirect financing to Boca Raton Management Company, an entity that acts as investment adviser to defendant and owns approximately 10% of the stock of defendant. It also constituted financing to a concern (Custom Engineering & Test Co.) under common control with the defendant. The foregoing financing to Custom Engineering & Test Co. was made without the prior written approval of SBA.

7. Defendant also sold the stock of Electro-Mechanical Systems, Inc., which is quoted and sold in the Over-the-Counter Market, to a stockholder, of defendant at a price which was or may have been less than market without the prior approval of SBA. This may have constituted a dividend or a distribution of assets of defendant to such stockholder.

8. Defendant company has not sought the counsel and advice of the Small Business Administration with respect to matters where there was doubt as to administrative policy. The management of defendant has been uncooperative with the Small Business Administration, and has to a certain extent been oblivious to, and disregarded SBA's advice, recommendations, and instructions in connection with the operations of the defendant company.

9. An underlying and overwhelming facet of this controversy is that defendant is and has been in liquidation.

10. It appears that the only remaining creditor of the defendant is the Small Business Administration.

11. The relief prayed for in the complaint has been substantiated by proof, and the relief sought should be granted.

12. Defendant is indebted to plaintiff as of February 26, 1968, in the principal amount of $422,758.51, plus accrued interest of $1348.56 through that date, with the interest accruing at the rate of $58.716459 per day.

## CONCLUSIONS OF LAW

1. Jurisdiction in this matter is conferred on this Court by virtue of the Small Business Investment Act (Act), 15 U.S.C. § 661 et seq., and 28 U.S.C. § 1345.

2. Section 308(c) of the Act, 15 U.S.C. § 687(c), authorizes the SBA to prescribe regulations governing the operations of small business investment companies, of which defendant is one.

3. Section 308(d) of the aforesaid Small Business Investment Act (15 U.S.C. § 687(d)) provides that upon a finding of noncompliance with, or an adjudication of violation of, the Act or the regulations prescribed thereunder, as determined and adjudged by this Court, all of the rights, privileges and franchises of the defendant BOCA RATON CAPITAL CORPORATION, may be forfeited, and the defendant company may be dissolved.

4. Section 311 of the aforesaid Small Business Investment Act (15 U.S.C. § 687c) provides that whenever, in the judgment of the Small Business Administration, the Licensee, or any other person, has engaged or is about to engage in any acts or practices which constitute or will constitute a violation of the aforesaid Act, or of any rule or regulation issued under the Act (13 C.F.R. Part 107), or of any order issued under the Act, the Admin-

istration may make application for an injunction and the proceeding in such case shall be made a preferred cause. In such proceedings, the Court may take exclusive jurisdiction of the Licensee, and the assets thereof; and the Court shall have jurisdiction to appoint a Receiver to administer the assets. First Louisiana Invest. Corp. v. United States, 351 F.2d 495 (5th Cir. 1965).

█ 5. Failure of defendant, Boca Raton Capital Corporation, to maintain at all times an unimpaired capital constitutes a violation of section 107.-303 of the SBA Regulations (Rev. 3), and as amended, section 107.1002, 33 Fed.Reg. 333, 334 (1968).

6. Defendant's failure to adequately establish reserves for losses and uncollectibles is in violation of Part 111 of the SBA Regulations, 13 C.F.R. § Pt. 111, and sections 107.717(a) and 107.-802(a), 13 C.F.R. § 107.717(a), 107.802 (a) (Rev. 3), and as amended, respectively, sections 107.1102(a) and 107.-1103(a), SBA Regulations, 33 Fed. Reg. 335, 336 (1968).

7. Defendant violated section 306 of the Small Business Investment Act and section 107.303(a) of the SBA Regulations, 13 C.F.R. § 107.303(a) (Rev. 3) in extending financing to Custom Engineering & Test Co. in excess of 20% of defendant's paid-in capital and surplus ($120,000.).

8. Defendant's control of Custom Engineering & Test Co. and Electro-Mechanical Systems, Inc., (E.M.S. Industries) was and is in violation of section 107.510(a) of the SBA Regulations, 13 C.F.R. § 107.510(a) and as amended, section 107.901, SBA Regulations, 33 Fed.Reg. 332, 333 (1968).

9. Defendant's financing extended to Custom Engineering & Test Co. was prejudicial to SBA and small business concerns and also constituted financing involving a conflict of interest, all of which is in violation of section 107.716 of the SBA Regulations, 13 C.F.R. § 107.716 (Rev. 3) and as amended, sec-tion 107.1004, SBA Regulations, 33 Fed.Reg. 334 (1968).

10. Defendant's sale of stock, held by it as an investment in a portfolio concern, to a stockholder of said defendant, without first obtaining the consent of the SBA, constituted a violation of sections 107.716 and 107.903 of the SBA Regulations, 13 C.F.R. §§ 107.716, 107.903 (Rev. 3).

11. This Court concludes as a matter of law that the aforesaid adjudicated violations of the Small Business Investment Act and the Small Business Administration Regulations by defendant are sufficient under said Act, 15 U.S.C. § 687c, for this Court to issue an injunction, appoint a Receiver, and enter a money judgment, as prayed for in the complaint, for the plaintiff, together with an award for costs to said plaintiff.

Plaintiff will present an appropriate Order and Judgment to this Court for filing with the Clerk of Court.