**In re D.A. KENNERLY, Debtor.**

**Robert F. ANDERSON,
Trustee, Plaintiff,**

**v.**

**CHARLESTON CAPITAL CORPORATION, Augusta Roofing & Metal Works, Federal Deposit Insurance Corporation, Monsanto Corporation, and Southern Bell Telephone and Telegraph Company, Defendants.**

**Bankruptcy No. 79–345.**

United States Bankruptcy Court,
D. South Carolina.

Sept. 29, 1987.

Robert F. Anderson, P.A., Columbia, S.C., for plaintiff.

A. Arthur Rosenblum, Charleston, S.C., for Charleston Capital Corp.

## MEMORANDUM AND ORDER

J. BRATTON DAVIS, Chief Judge.

The plaintiff, as trustee of the bankruptcy estate, seeks in this adversary proceed-

ing (1) a determination of the validity of certain liens on real property in Aiken County and (2) a determination of the validity of Charleston Capital Corporation's mortgage on said property.

The plaintiff alleges that Charleston Capital Corporation's mortgage is unenforceable against the plaintiff because it is an illegal contract in that the mortgage was obtained in violation of the regulations of the United States Department of Agriculture—Farmers Home Administration and in violation of the Small Business Investment Company Regulations of the United States Small Business Administration. Arguing that no regulations have been violated, Charleston Capital Corporation asserts that the mortgage is valid and enforceable. In the alternative, Charleston Capital Corporation maintains that even if certain regulations have been violated, such violations may be enforced only by the United States of America.

## FACTS

1. On August 16, 1979, D.A. Kennerly filed a petition for relief under chapter VII of the Bankruptcy Act of 1898 (the Act) and was adjudged a bankrupt.

2. The plaintiff is the trustee of the bankruptcy estate. He brings this adversary proceeding against Charleston Capital Corporation in his capacity as trustee under § 70(c) of the Act.

3. This adversary proceeding began on February 8, 1983. The complaint was amended pursuant to an order of this court dated November 18, 1983.

4. Pursuant to a consent order dated November 17, 1983, the plaintiff's causes of action against Charleston Capital Corporation were severed from and ordered for separate trial apart from the plaintiff's causes of action against the Federal Deposit Insurance Corporation. All other causes of action in this complaint against other named defendants had been resolved prior to the consent order of November 17, 1983.[1]

5. Charleston Capital Corporation, the remaining defendant in the present controversy, does business in the state of South Carolina and has its principal offices in Charleston, South Carolina.

6. Charleston Capital Corporation has been licensed as a Small Business Investment Company by the United States Small Business Administration since 1961.

7. Mr. Henry Yaschik has been the president and principal stockholder of Charleston Capital Corporation since its organization. At all times pertinent to this proceeding, Mr. Yaschik was also president of Yaschik Mortgage Company.

8. As of March 31, 1986, the shareholders of Charleston Capital Corporation were: Mr. Henry Yaschik (48,855 shares), Yaschik Mortgage Company (8,893 shares), Mr. Leonard Silver (1 share), and Mr. Howard Mitchell (1 share). As of March 31, 1977, the shareholders of Charleston Capital Corporation were: Mr. Henry Yaschik (53,889 shares), Yaschik Mortgage Company (9,809 shares), Mr. Leonard Silver (1 share) and Mr. Howard Mitchell (1 share).

9. On January 18, 1973, D.A. Kennerly —both individually and as president of Southeastern Chemical and Insecticide Company, Inc. (Southeastern Fairfax)— gave to Charleston Capital Corporation a $60,000. note secured by a mortgage on real property. The mortgage was recorded in the Office of Mesne Conveyances for Aiken County, South Carolina, on Mortgage Book 416 at page 295.

10. On or about January 18, 1973, Southeastern Fairfax issued 100 shares of preferred stock to Charleston Capital Corporation.

11. On November 20, 1975, Southeastern Fairfax borrowed an additional $25,000. from Charleston Capital Corporation. This

---

**1.** Defendant Southern Bell consented to relief sought by plaintiff (*See,* Answer filed March 2, 1983); Defendants Augusta Roofing & Metal Works and Monsanto Corporation failed to answer complaint (*See,* order for judgment filed March 24, 1983, and a settlement was subsequently reached with defendant Monsanto (*See,* order authorizing settlement filed July 25, 1985); a settlement was reached with defendant FDIC (*See,* order authorizing settlement filed July 31, 1985).

loan was partially secured by a mortgage on the same property.

12. Prior to March 1, 1976, D.A. Kennerly, through Yaschik Mortgage Company, applied to the United States Department of Agriculture, Farmers Home Administration (Farmers Home Administration) for a loan, guaranteed by Farmers Home Administration, for Southeastern Chemical Corporation of Bishopville, South Carolina, Inc. (Southeastern Bishopville), and for Southeastern Fairfax. Prior to March 1, 1976, the Farmers Home Administration loan was approved as two separate loans, each in the amount of $350,000., for a total loan package of $700,000. The Farmers Home Administration loans were to be privately placed, with the Farmers Home Administration guaranteeing all but ten (10%) percent—$70,000.—of the two loans.

13. The Farmers Home Administration loans were secured by the real estate, production plants and inventories of the two corporations, and by the personal guaranty of D.A. Kennerly.

14. When the Farmers Home Administration loans were approved, the parties agreed that Yaschik Mortgage Company would assign the guaranteed portion of the two loans to the Hartford Life Insurance Company. In other words, $630,000. of the $700,000. in loans were to be assigned to the Hartford Life Insurance Company. Because Yaschik Mortgage Company retained an interest only in the unguaranteed portion of the two notes, the extent of Yaschik Mortgage Company's participation in the loans equaled $70,000.

15. On March 1, 1976—before the closing of the Farmers Home Administration loans—the outstanding balances on the 1973 and 1975 loans from Charleston Capital Corporation to Southeastern Fairfax totalled approximately $68,000.

16. While negotiating the loan, Charleston Capital Corporation, Yaschik Mortgage Company and D.A. Kennerly agreed that Yaschik Mortgage Company would assign to Charleston Capital Corporation the unguaranteed portion of the two loans which totalled $70,000. By this agreement, the $70,000. for the unguaranteed portion of the two loans would never be advanced to Southeastern Bishopville and Southeastern Fairfax. Instead, the $70,000. would be applied to satisfy the pre-existing debt of approximately $68,000. which Southeastern Fairfax owed to Charleston Capital Corporation. In that Yaschik Mortgage Company's participation in the unguaranteed portion of the two loans was to be assigned to Charleston Capital Corporation, the $70,000. was to remain a bookkeeping transaction only; no funds were to be transferred. The Farmers Home Administration was not notified of this agreement.

17. On March 1, 1976, the two loans guaranteed by the Farmers Home Administration were effectuated. On that day, D.A. Kennerly as president of Southeastern Fairfax, by note promised to pay Yaschik Mortgage Company the sum of $350,000.; and, Mr. Kennerly, as president of Southeastern Bishopville, by note promised to pay $350,000. to Yaschik Mortgage Company. Yaschik Mortgage Company assigned to Hartford Life Insurance Company the guaranteed portion (ninety (90%) percent) of the two notes.

18. Thereafter, by verbal agreement, Yaschik Mortgage Company assigned its participation in the unguaranteed portion (ten (10%) percent) of the two notes to Charleston Capital Corporation; no written assignment was executed.

19. Despite an original intent to the contrary, Charleston Capital Corporation subsequently advanced $45,000. of the unguaranteed portion of the loans to the bankrupt and retained the remaining $25,000. As Charleston Capital Corporation applied the remaining $25,000. to satisfy the 1975 note, the outstanding balance owed by the bankrupt to Charleston Capital Corporation on the 1973 note was approximately $43,000. on or about April 26, 1976.

20. In return for the $45,000. advance, the bankrupt, on April 26, 1976, gave to Charleston Capital Corporation a new mortgage—securing $70,000.—on the Aiken County property and other property. The new mortgage secured not only the unpaid amount ($43,000.), but served as additional

security on Charleston Capital Corporation's ten (10%) percent participation in the two loans which had been guaranteed by the Farmers Home Administration. Charleston Capital Corporation recorded the new mortgage in the office of the Register for Mesne Conveyances for Aiken County, South Carolina, in Mortgage Book 465 at page 647. In this adversary proceeding, the plaintiff alleges that the new mortgage is invalid.

21. Following the execution of the new mortgage on April 26, 1976, Charleston Capital Corporation held two mortgages on the Aiken County property—the 1976 mortgage recorded in Mortgage Book 465 at page 647, and the 1973 mortgage recorded in Mortgage Book 416 at page 295.

22. By agreement dated August 25, 1976, Southeastern Fairfax, Southeastern Bishopville, Yaschik Mortgage Company and Charleston Capital Corporation agreed to increase the interest rate on the unguaranteed portion of the two notes from the original rate of ten (10%) percent to a rate of fifteen (15%) percent per annum. The new interest rate of fifteen (15%) percent applied only to the unguaranteed portion of the debt which Yaschik Mortgage Company had assigned to Charleston Capital Corporation; the agreement did not modify the interest rate under the guaranteed portion of the loans which had been assigned to the Hartford Life Insurance Company.

23. In February of 1979, the balance of the monies owed by Southeastern Fairfax on the initial 1973 loan and the dividends on the preferred stock were paid (*See* Fact 10). The preferred stock was returned to Southeastern Fairfax; and the 1973 note and mortgage which covered the Aiken County property were marked satisfied. As a result, Charleston Capital Corporation retained the $70,000. mortgage, executed on April 26, 1976, to secure the unguaranteed portion of the two loans which had been guaranteed by the Farmers Home Administration; the 1976 mortgage secured no other debt.

24. The assignment agreements between Yaschik Mortgage Company, the Farmers Home Administration and Hartford Life Insurance Company contain, on page 67, the following provision:

The lender will service the entire loan and will remain mortgagee and/or secured party of record, notwithstanding the fact that another may hold a portion of the loan. *The entire loan will be secured by the same security with equal lien priority for the guaranteed and unguaranteed portions of the loan.* The lender may charge the holder a servicing fee. The unguaranteed portion of the loan will not be paid first nor given any preferential priority over the guaranteed portion of the loan. (emphasis added).

25. Southeastern Fairfax, Southeastern Bishopville and the bankrupt defaulted on the two loans which had been guaranteed by the Farmers Home Administration, and, by action brought in federal court, the mortgages covering the properties in Fairfax and Bishopville were foreclosed. Although the judgments exceeded $650,000., the sale of the properties produced only $116,000.—a deficiency of more than $500,000.

26. The United States Small Business Administration has filed a large claim against the bankruptcy estate as a priority creditor.

## ISSUES

1. Whether the trustee has standing to assert the alleged violations of the Farmers Home Administration regulations and the Small Business Investment Company regulations of the Small Business Administration.

2. Whether Charleston Capital Corporation has violated the regulations of the United States Department of Agriculture—Farmers Home Administration, by accepting a mortgage to secure the unguaranteed portion of the loans to Southeastern Fairfax and Southeastern Bishopville.

3. Whether Charleston Capital Corporation has violated the regulations of the United States of America, Small Business Administration, including the Small Business Investment Company regulations, as a

result of the transactions by and between Charleston Capital Corporation, Yaschik Mortgage Company, the bankrupt, Southeastern Fairfax and Southeastern Bishopville.

4. If Charleston Capital Corporation has violated the regulations of the Farmers Home Administration, or the Small Business Investment Company regulations of the Small Business Administration, whether the mortgage to Charleston Capital Corporation is unenforceable as an illegal contract.

## DISCUSSION AND CONCLUSIONS OF LAW

### I

■ The plaintiff argues that as a result of alleged violations of Farmers Home Administration and Small Business Administration regulations, Charleston Capital Corporation's mortgage on the property in Aiken County is an illegal contract which may not be enforced.

The Farmers Home Administration guaranteed ninety (90%) percent of two loans, each of which was personally guaranteed by the bankrupt. Yaschik Mortgage Company assigned the guaranteed portion of the two loans to the Hartford Insurance Company, and assigned the unguaranteed portion of the two loans to Charleston Capital Corporation. In March of 1976, at the time of the closing of the two loans guaranteed by the Farmers Home Administration, regulations governing the Farmers Home Administration Business and Industrial Loan Program were in effect and were applicable to various aspects of the two loans. These regulations, found at 7 C.F.R. §§ 1980.401–1980.453 (1976).[2], were specifically promulgated to apply to loans such as the two loans under discussion. The promulgation of these regulations is authorized by 7 U.S.C. § 1989 (1985).[3]

Charleston Capital Corporation is a licensed Small Business Investment Company. The Small Business Investment Act of 1958, as amended, (P.L. 85–699, 72 Stat. 689, which appears generally as 15 U.S.C. §§ 661, *et seq.*) (1985), provides the statutory basis for Small Business Investment Companies. In addition, specific regulations have been promulgated to govern Small Business Investment Companies. These regulations, which were in effect in March of 1976, are found in 13 C.F.R. §§ 107.1–107.1203 (1976). The Small Business Investment Company regulations have the force and effect of law. *Hernstadt v. Programs for Television, Inc.,* 232 N.Y.S. 2d 683, 36 Misc.2d 628 (N.Y.Civ.Ct.1962); 45 Am.Jur.2d, *Investment Companies, etc.,* Section 5. *See also, Electronic Systems Investment Corporation v. Small Business Administration,* 405 F.2d 188 (4th Cir.1968), *cert. denied,* 394 U.S. 1014, 89 S.Ct. 1633, 23 L.Ed.2d 41 (1969); *United States v. Coleman Capital Corporation,* 295 F.Supp. 1016 (D.N.D.Ill.1969). As Charleston Capital Corporation is a licensed Small Business Investment Company, both the Small Business Investment Company Act of 1958, as amended, (P.L. 85–699, 72 Stat. 689, which appears generally as 15 U.S.C. §§ 661 *et seq.*) (1985) and the corresponding regulations apply to Charleston Capital Corporation.

The issue arises as to whether the plaintiff has standing to assert the alleged violations of federal regulations. Responding to the plaintiff's contention that the alleged violations of federal regulations render the mortgage unenforceable as an illegal contract, Charleston Capital Corporation asserts that no private cause of action exists for the alleged violations. In support of its argument that the plaintiff has no cause of action under either set of regulations, Charleston Capital Corporation cites: *Manufacturer's Hanover Mortgage Corpora-*

---

**2.** The regulations in issue shall appear, for the purposes of this order, in the form in which they were found at the times relevant to the present controversy, which is, for the most part, the spring of 1976. The effective date of 7 C.F.R. § 1980.401 *et seq.,* which is referred to as the Farmers Home Administration Business and

Industrial Loan Program, is December 11, 1975. 40 Fed.Reg. 57,643 (1975).

**3.** 7 U.S.C. § 1989 (1985) became effective on December 7, 1961, and has not been amended. 26 Fed.Reg. 10031 (1961).

*tion v. Snell,* 370 N.W.2d 401 (Mich.App. Ct.1985); *Roberts v. Cameron Brown,* 556 F.2d 356 (5th Cir.1977); *Perry v. Housing Authority of Charleston,* 664 F.2d 1210 (4th Cir.1981); *Rank v. Nimmo,* 677 F.2d 692 (9th Cir.1982), *cert. denied,* 459 U.S. 907, 103 S.Ct. 210, 74 L.Ed.2d 168 (1982); and *Bright v. Nimmo,* 756 F.2d 1513 (11th Cir.1985). These cases, however, are inapposite here: each case involves the regulations of the Veterans Administration (V.A.) or the Department of Housing and Urban Development (H.U.D.). In each case, the regulations which the plaintiff attempts to enforce are discretionary in that the regulations set forth procedures under which the plaintiff, as the borrower under a federally assisted program, should be given opportunities to cure his or her defaults under the mortgage. The cited decisions do not involve a challenge to the validity of the mortgage contract; rather, the cases impliedly recognize the validity of the mortgage and focus instead upon administrative procedures preceding foreclosure.

The plaintiff in the proceeding at bar is not pursuing a private cause of action under the regulations. Nor is the plaintiff attempting to police violations of the regulations. Instead, the plaintiff seeks to avoid the validity of a mortgage obtained through alleged violations of the regulatory prohibitions when enforcement would be against property of the bankruptcy estate, *ergo,* to the detriment of creditors of the bankruptcy estate. Taking no position as to whether the Farmers Home Administration or the Small Business Administration should bring or take action against Charleston Capital Corporation for the alleged violations, the plaintiff argues that Charleston Capital Corporation is not entitled to benefit from its violations to the detriment of the bankruptcy estate and its creditors.

In reaching a decision in this case, the court is guided by *Kaiser Steel Corporation v. Julius Mullins,* 455 U.S. 72, 102 S.Ct. 851, 70 L.Ed.2d 833 (1982). In that case, one party sought to prevent the enforcement of a contract on the basis of a violation of federal anti-trust laws, while the other party argued that only the National Labor Relations Board (N.L.R.B.) can enforce violations of the anti-trust provisions. Holding that the anti-trust law violations could prevent the enforcement of the contract, the Supreme Court noted that, "It is well established, however, that a federal court has a duty to determine whether a contract violates federal law before enforcing it." *Kaiser Steel Corporation v. Julius Mullins,* 455 U.S. 72, 83, 102 S.Ct. 851, 859, 70 L.Ed.2d 833 (1982). By way of explanation, the Supreme Court stated:

> While only the Board may provide affirmative remedies for unfair labor practices, a court may not enforce a contract provision which violated § 8(e). Were the rule otherwise, parties could be compelled to comply with contract clauses, the lawfulness of which would be insulated from review by any court.

*Id.,* at 86, 102 S.Ct. at 861.

The decision in *Kaiser* reinforces *Quinn v. Gulf & Western Corporation,* 644 F.2d 89, 92–94 (2nd Cir.1981) in which the Court of Appeals for the Second Circuit held that a contract in violation of federal regulations is unenforceable as an illegal contract.

Here the plaintiff's argument is consistent with *Kaiser* and *Quinn.*

The plaintiff seeks to prevent the enforcement of a mortgage allegedly obtained in violation of federal regulations. The Supreme Court has stated that "[a] federal court has a duty to determine whether a contract violates federal law before enforcing it." *Kaiser Steel Corporation v. Julius Mullins,* 455 U.S. 72, 83, 102 S.Ct. 851, 859, 70 L.Ed.2d 833 (1982). Thus, it appears that the plaintiff has standing to raise the issues as to whether or not Charleston Capital Corporation has violated Farmers Home Administration Regulations and the Small Business Investment Company regulations of the Small Business Administration, and whether, as a result of the alleged violations, Charleston Capital Corporation's mortgage is an illegal and unenforceable contract.

## II

## A

### Farmers Home Administration Regulations

Seeking to have the mortgage declared null and void, the plaintiff alleges that Charleston Capital Corporation's mortgage is in violation of the regulations of the Farmers Home Administration which govern the Business and Industrial Loan Program. The regulations governing the Business and Industrial Loan Program of the Farmers Home Administration occur in 7 C.F.R. §§ 1980.401–1980.453 (1976), which is entitled Subpart E–Business and Industrial Loan Program. As stated in the introduction to Subpart E–Business and Industrial Loan Program:

> This Subpart supplemented by Subpart A of this Part, contains regulations for Business and Industrial (B & I) loans guaranteed or insured by the Farmers Home Administration (FmHA), and applies to lenders, holders, borrowers, and other parties involved in making, guaranteeing, insuring, holding, servicing, or liquidating such loans.

7 C.F.R. § 1980.401(a) (1976).

■ Yaschik Mortgage Company, the lender of record in the two loans to Southeastern Fairfax and Southeastern Bishopville, is bound by these regulations.

Yaschik Mortgage Company is clearly a "lender".[4] It requested the loan guarantees on behalf of Southeastern Bishopville and Southeastern Fairfax.

The regulations found in Subpart E, which govern the Business and Industrial Loan Program, also apply to Charleston Capital Corporation. While Yaschik Mortgage Company is the "lender" as defined in footnote 1, and is the lender of record in the two loans to Southeastern Fairfax and Southeastern Bishopville, Yaschik Mortgage Company never advanced any funds to either Southeastern Fairfax or Southeastern Bishopville—it assigned its participation in the two loans to Charleston Capital Corporation, and Charleston Capital Corporation loaned $45,000. to the bankrupt.

Therefore, Charleston Capital Corporation is a party "involved in making" a Business and Industrial loan guaranteed by the Farmers Home Administration within the meaning of 7 C.F.R. 1980.401(a) (1976)[5], and the regulations of the Farmers Home Administration apply with equal force and effect to Yaschik Mortgage Company and to Charleston Capital Corporation.

■ The plaintiff has alleged that Charleston Capital Corporation violated 7 C.F.R. § 1980.443(a)(3) (1976) which provides:

> All collateral must secure the entire loan. The lender will not take separate collateral to secure only that portion of the loan or loss not covered by the guarantee. The lender will not require compensating balances or certificates of deposit as a means of eliminating the lender's exposure on the unguaranteed portion of the loan. However, compensating balances as used in the ordinary course of business may be used.

As previously discussed, for the purposes of loans guaranteed by the Farmers Home Administration, "lender" is defined at 7 C.F.R. § 1980.403(n) (1976) as:

> The person or organization making and servicing the loan which is guaranteed under the provisions of this subpart. The lender is also the party requesting the loan guarantee.

While Yaschik Mortgage Company is the "lender" for the purposes of the two loans guaranteed by the Farmers Home Administration, Charleston Capital Corporation is also prohibited by 7 C.F.R. § 1980.443(a)(3) (1976) from taking "separate collateral to

---

4. As defined by the regulations of the Farmers Home Administration, Department of Agriculture, under 'Subchapter P–Guaranteed Loans, "lender" is defined as: "The person or organization making and servicing the loan which is guaranteed under the provisions of this subpart.

The lender is also the party requesting the loan guarantee." 7 C.F.R. § 1980.403(n) (1976).

5. See page 788 for the full text of 7 C.F.R. § 1980.401(a) (1976).

secure only that portion of the loan or loss not covered by the guarantee." To find otherwise would allow Yaschik Mortgage Company and Charleston Capital Corporation to circumvent the regulation (7 C.F.R. § 1980.443(a)(3) (1976)) by a gratuitous assignment because both assignor and assignee are commonly owned and controlled (See Facts 7–8).

Charleston Capital Corporation's mortgage securing the unguaranteed portion of the two loans, but not securing the guaranteed portion of the two loans, violates 7 C.F.R. § 1980.443(a)(3) (1976)[6], which states that "All collateral must secure the entire loan...." Charleston Capital Corporation argues that the mortgage served merely as "additional" security for the unguaranteed portion of the two notes; that the real purpose underlying the mortgage was to secure pre-existing indebtedness owed by Southeastern Fairfax to Charleston Capital Corporation. (See Facts 15–20, *supra*, at 784–785). This argument ignores the fact that even after the closing of the two Farmers Home Administration guaranteed loans in March of 1976, Charleston Capital Corporation held two loans against the property: the 1973 mortgage securing the 1973 note and preferred stock (See Facts 9–11, *supra*, at 783–784); and the 1976 mortgage.

In February of 1979, the 1973 note and preferred stock were paid in full, and the 1973 note was satisfied. As a result, Charleston Capital Corporation was entitled to payment only for the unguaranteed portion of the two notes made in 1976 to Southeastern Fairfax and Southeastern Bishopville. Therefore, Charleston Capital Corporation's mortgage now serves one purpose—to secure the unguaranteed portion of the two notes.

Therefore, Charleston Capital Corporation obtained the 1976 mortgage through direct violation of 7 C.F.R. § 1980.443(a)(3) (1976).

## II

### *Small Business Investment Company Regulations*

Charleston Capital Corporation has been licensed as a Small Business Investment Company (S.B.I.C.) since 1961. As an S.B.I.C. licensee, Charleston Capital Corporation must comply with the regulations promulgated to govern Small Business Investment Companies.[7] The scope of the regulations which govern Small Business Investment Companies is described at 13 C.F.R. § 107.1 (1976) as follows:[8]

> The regulations in this part implement the Small Business Investment Act of 1958, as amended. All Licensees, including section 301(d) Licensees, must comply with all regulations and appendices.

(Footnote omitted).

The plaintiff alleges that Charleston Capital Corporation, in obtaining its mortgage in 1976 against the Aiken County property, has violated Small Business Investment Company regulations which prohibit conflicts of interest and self-dealing. Specifi-

---

**6.** The mortgage is described in Fact 20, p. 784.

**7.** The regulations which governed Small Business Investment Companies at the time relevant to the present controversy may be found at 13 C.F.R. §§ 107.1–107.1202 (1976), which became effective on November 7, 1973. 38 Fed.Reg. 30,837 (1973).

**8.** The Small Business Investment Company Act of 1958, as amended, (P.L. 85–699, 72 Stat. 689, which appears generally at 15 U.S.C. §§ 661, *et seq.*) provides for the promulgation of regulations to control conflicts of interest at 15 U.S.C. § 687d, which states: "§ 687d. *Conflicts of Interest.* For the purpose of controlling conflicts of interest which may be detrimental to small business concerns, to small business investment companies, to the shareholders or partners of either, or to the purposes of this Act, the Administration shall adopt regulations to govern transactions with any officer, director, shareholder [shareholder, or partner] of any small business investment company, or with any person or concern, in which any interest, direct or indirect, financial or otherwise, is held by any officer, director, shareholder [shareholder, or partner] of (1) any small business investment company, or (2) any person or concern with an interest, direct or indirect, financial or otherwise, in any small business investment company. Such regulations shall include appropriate requirements for public disclosure (including disclosure in the locality most directly affected by the transaction) necessary to the purposes of this section."

cally, the plaintiff cites 13 C.F.R. § 107.1004 (1976) which states, in part:

(a) *General.* Self-dealing to the prejudice of the small concern, or of a Licensee or its shareholders; or of SBA, is prohibited.

(b) *Prohibitions.* Except where a written exemption may be granted by SBA in special instances in furtherance of the purposes of the Act:

(1) A Licensee shall not, directly or indirectly, provide Financing to any of its Associates.

The definitional section to the Small Business Investment Company regulations is found at 13 C.F.R. § 107.3 (1976); reference to this section is necessary when determining whether Charleston Capital Corporation has violated the regulations. In making such determination, the court must consider the definition of "Small Concern":

*Small Concern.* "Small Concern" means a small business concern as defined in section 103(5) of the Act (including affiliates as defined in § 121.3–2 of this chapter), which for purposes of size eligibility, meets the applicable criteria set forth in § 121.3–11 of Part 121 of this chapter.

In applying that definition to Southeastern Fairfax and Southeastern Bishopville, it should be noted that, as a Small Business Investment Company, one of Charleston Capital Corporation's functions is "to provide a source of equity capital for incorporated and unincorporated small business concerns...." 15 U.S.C. § 684(a) (1985). The S.B.I.C. regulations use the term "small concern" in a manner that contemplates its application to the borrower. In prohibiting self-dealing and conflicts of interest by S.B.I.C. licensees, it is implicit that the prohibitions are intended to protect a Small Business Investment Company's borrowers. Southeastern Fairfax and

Southeastern Bishopville were the borrowers in the context of the two loans made in 1976 and guaranteed by the Farmers Home Administration; therefore, Southeastern Fairfax and Southeastern Bishopville may be regarded as "small concerns" for the purpose of the matter presently before the court.[9]

A second definition of importance in this matter is the definition of "Associate of a Licensee":

*Associate of a Licensee:* "Associate of a Licensee" means [in part]:

(b) Any person owning or controlling, directly or indirectly, ten or more percent of any class of stock of such Licensee; or

\*　　\*　　\*　　\*　　\*　　\*

(d) Any Person which directly or indirectly Controls or is Controlled by, or is under common Control with, a Licensee or any Person described in paragraphs (a) and (b) of this section; ....

7 C.F.R. § 107.3 (1976).

For the purposes of the S.B.I.C. regulations, "person" is defined as "[a] natural person or legal entity."[10] Furthermore, "Control" is defined within the regulations to mean "the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a Licensee or a Small Concern whether through the ownership or voting securities, by contract or otherwise."[11]

### A

■ As defined above, it appears that Yaschik Mortgage Company was an "associate" of Charleston Capital Corporation, and was a "person" owning more than ten (10%) percent of Charleston Capital Corporation's stock at all times relevant to the present controversy.[12] Mr. Yaschik, as the

---

9. A specific finding that the borrowers are "small concerns" is not necessary here. *See, e.g., United States v. Boca Raton Capital Corporation,* 285 F.Supp. 504 (S.D.Fla.1968), in which the court, applying the S.B.I.C. regulations, did not specifically identify the borrowers as "small concerns" within the definition of the term as it appears in the S.B.I.C. regulations.

10. 7 C.F.R. 107.3 (1976).

11. *Id.*

12. As of March 31, 1976, Yaschik Mortgage Company owned 8,893 shares of the total 57,750 outstanding shares, or 15.4% of Charleston Capital Corporation. As of March 31, 1977, Yaschik Mortgage Company owned 9,809 shares of the

president and majority shareholder of both Charleston Capital Corporation and Yaschik Mortgage Company, held "Control" of both Charleston Capital Corporation and Yaschik Mortgage Company. Therefore, Yaschik Mortgage Company is an "associate" of Charleston Capital Corporation under either subparagraph (b) or subparagraph (d) of the definition of "associate" which appears above.

Application of these definitions to the present facts reveals that Charleston Capital Corporation has violated the provisions of 7 C.F.R. §§ 107.1004(a) and 107.1004(b)(1) (1976).

Although Southeastern Fairfax and Southeastern Bishopville together entered into loan agreements with Yaschik Mortgage Company whereby Yaschik Mortgage Company agreed to lend $70,000. to the two companies, the fact is that Yaschik Mortgage Company, by verbal agreement, assigned these loans to Charleston Capital Corporation, and in the end, Charleston Capital Corporation loaned only $45,000. to Southeastern Fairfax and Southeastern Bishopville. (See Facts 18–19, *supra*, at 784). However, in order to obtain even the $43,000. out of the total loan commitment of $70,000., Charleston Capital Corporation required a new mortgage from the bankrupt. As a result, Charleston Capital Corporation held two mortgages: a 1973 mortgage and a 1976 mortgage. Moreover, in August of 1976, Charleston Capital Corporation required an increase in the interest rate on the unguaranteed portion of the two loans from ten (10%) percent to fifteen (15%) percent per annum.

Such course of events is one of self-dealing to the detriment of Southeastern Fairfax and Southeastern Bishopville. The 1976 mortgage secured only the unguaranteed portion of the two loans which had been guaranteed by the Farmers Home Administration in direct violation of 7 C.F.R. § 1980.443(a)(3) (1976), a regulation which has as its clear purpose the prevention of self-dealing.

Southeastern Fairfax and Southeastern Bishopville were clearly prejudiced by

total 63,700 outstanding shares, or 15.4% of

Charleston Capital Corporation's self-dealing: (1) neither Southeastern Fairfax nor Southeastern Bishopville received the full amount of its Farmers Home Administration guaranteed loan; and (2) the granting of the 1976 mortgage by the bankrupt to Charleston Capital Corporation impaired the bankrupt's ability to borrow further by encumbering its collateral.

Charleston Capital Corporation's mortgage significantly decreases the assets available for the payment of creditors of the bankruptcy estate. The Small Business Administration is one of the largest creditors, and Charleston Capital Corporation's mortgage threatens to reduce the Small Business Administration's distribution from the bankruptcy estate.

B

■ Charleston Capital Corporation has also violated 13 C.F.R. § 107.1004(b)(1) (1976) which provides that a licensee shall not directly or indirectly provide financing to any of its associates. While Yaschik Mortgage Company is the lender of record in the 1976 loan transactions, it advanced no monies under the loans. The monies advanced for the unguaranteed portion of the two loans were advanced by Charleston Capital Corporation as the assignee of Yaschik Mortgage Company's participation in the loans.

Yaschik Mortgage Company is the second largest shareholder of Charleston Capital Corporation. Charleston Capital Corporation and Yaschik Mortgage Company are controlled by the same individual. (See Facts 7–8, *supra*, at 783). In that the loans were structured in such a way that Charleston Capital Corporation, not Yaschik Mortgage Company, would advance the loan proceeds, if any, the arrangement constitutes indirect financing of Yaschik Mortgage Company's obligation under the 1976 loans.

In summary, Charleston Capital Corporation violated the 13 C.F.R. §§ 107.1004(a) and 107.1004(b)(1) (1976).

Charleston Capital Corporation.

## IV

■ Charleston Capital Corporation obtained the 1976 mortgage in issue by violating regulations which govern the Business and Industrial Loan Program of the Farmers Home Administration and by violating regulations which govern Small Business Investment Companies.[13] The question now becomes whether the mortgage is an illegal, and therefore, unenforceable contract.

As stated in *McConnell v. Kitchens,* 20 S.C. 430 (1884), "The general rule, undoubtedly, is, that a contract to do an act which is prohibited by statute, or which is contrary to public policy, is void, and cannot be enforced in a court of justice." *See also, Grant v. Butt,* 198 S.C. 298, 17 S.E.2d 689, 693 (1942); and *Batchelor v. American Health Insurance Company,* 234 S.C. 103, 107 S.E.2d 36 (1959). The law "will not promote in one form that which it declares wrong in another, and hence contracts which bring about results which the law seeks to prevent are unenforceable...." 17 Am.Jur.2d, *Contracts* § 155 (footnotes omitted). *See also, Kaiser Steel Corporation v. Mullins,* 455 U.S. 72, 83, 102 S.Ct. 851, 859, 70 L.Ed.2d 833 (1982), and *Quinn v. Gulf & Western Corporation,* 644 F.2d 89, 92–94 (2nd Cir.1981), which involved violation of federal statutes and are discussed *supra,* at 787.

In the instant case, regulations have been violated. However, the existence of violations alone does not necessarily make a contract illegal; merely technical violations may require that the parties to a contract pursue other remedies. When statutes, or in this case, regulations have been violated, the court must review the nature of the violations and consider the object of the law. *McConnell v. Kitchens,* 20 S.C. 430 (1884).

*McConnell v. Kitchens, supra,* involved the violation of statutory provisions which governed the sale of fertilizers. In determining whether the violations rendered a contract illegal, and therefore, unenforceable, the court, after noting that the viola-

tion of a statute designed for raising revenue is generally not sufficient to make the contract illegal and unenforceable, observed that if the prohibition imposed by statute is for the purpose of prohibiting certain conduct or for compelling compliance with desirable conduct, then violation of the statute renders the contract illegal, and thus, unenforceable at law. *McConnell v. Kitchens,* 20 S.C. 430, 436 (1884).

The regulation of the Business and Industrial Loan Program of the Farmers Home Administration (7 C.F.R. § 1980.443(a)(3) (1976), which has been put into issue by this case, is clearly intended to prohibit conduct, and not generate revenue. The same can be said of 13 C.F.R. §§ 107.1004(a) and 107.1004(b)(1) (1976), the Small Business Investment Company regulations which have been violated by Charleston Capital Corporation.[14]

In this case, Charleston Capital Corporation would not have its mortgage but for its violation of the regulations. Enforcement of the mortgage in this court would be in furtherance of the violations. Accordingly, this court finds Charleston Capital Corporation's 1976 mortgage unenforceable as an illegal contract.

## ORDER

THEREFORE, IT IS ORDERED, ADJUDGED AND DECREED that Charleston Capital Corporation's mortgage, recorded in the Office of the Register of Mesne Conveyances for Aiken, South Carolina, in Mortgage Book 465 at page 647, is based on an illegal contract and, as to the plaintiff, is void and of no effect.

---

13. *See,* discussion *supra,* at 789–791.

14. See discussion of the cited regulation, *supra,* at 789–791.